UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  Chapter 13
Robert James Lee,  Case No. 16-53256
      Debtor.  Judge Lisa S. Gretchko
_____/

## OPINION DENYING DEBTOR'S (I) MOTION FOR RECONSIDERATION OF ORDER DENYING PLAN MODIFICATION, AND (II) MOTION FOR RECONSIDERATION OF ORDER GRANTING TRUSTEE'S MOTION TO DISMISS

The Debtor filed Chapter 13 on September 27, 2016, and his Chapter 13 plan ("Plan"; ECF No. 10) was confirmed on January 4, 2017, as a 36-month plan providing a -0- payment to unsecured creditors. Pursuant to Provision II.A of the Plan, when the Debtor failed to complete all the Plan payments in 36 months, the Plan length was automatically extended to 60 months.

Consequently, the Plan expired on January 4, 2022.

Section V.W of the Plan states:

Debtor shall timely file each Federal Income Tax Return required to be filed under applicable law during the pendency of this case, and shall provide to the Trustee a copy of each Return at the same time the Return is filed with the taxing authority.

On January 24, 2022—three weeks after the Plan expired—the Debtor provided the Trustee with copies of tax returns for 2016, 2017, 2018, 2019 and 2020.

On February 18, 2022, the Trustee filed a Motion to Dismiss Due to Expiration of the Chapter 13 Plan ("Dismissal Motion"; ECF No. 80), asserting the following material

1

defaults under the Plan: (i) expiration of the Plan without fulfilling all of its terms, (ii) failure to remit all Plan payments to the Trustee for distribution, (iii) failure of all priority creditors to receive repayment as required by the Plan, and (iv) failure to remit tax refunds to the Trustee. The Dismissal Motion did not assert the Debtor's failure to provide the 2016-2020 tax returns as a material default, presumably because those returns were provided to the Trustee before he filed that motion.

On March 4, 2022, the Debtor filed a response to the Dismissal Motion ("Response"; ECF No. 81) denying the materiality of any defaults and stating that the Debtor would take action to address Plan delinquencies.

On April 26, 2022—nearly four months after the Plan expired—the Debtor filed a proposed Plan modification ("Plan Modification"; ECF No. 86) seeking excusal of Debtor's 2016-2019 tax refunds and agreeing to remit (by June 10, 2022) a sum sufficient to complete all obligations under the Plan. On May 16, 2022, the Trustee filed his objection to the Plan Modification ("Objection to Plan Modification"; ECF No. 87).

On June 16, 2022, the Court held a hearing ("Hearing") on the Debtor's proposed Plan Modification and the Trustee's Motion to Dismiss. The argument lasted approximately 57 minutes. During the Hearing, the Court raised the issue of the Debtor's failure to timely provide the Trustee with tax returns for 2016 through 2020—a five-year continuing default under Section V.W of the Plan.

At no time during the Hearing did Debtor's counsel request an adjournment so that he could supplement his pleadings or prepare additional remarks to respond to the Court's

concern about the Debtor's five-year failure to comply with Section V.W of the Plan. After a brief recess, the Court issued an oral ruling granting the Trustee's Motion to Dismiss and denying the proposed Plan Modification. On June 24, 2022, the Court entered orders memorializing its rulings (ECF Nos. 92 and 93).

On July 8, 2022, the Debtor timely filed motions for reconsideration with respect to both of the foregoing orders ("Motions for Reconsideration"; ECF Nos. 95 and 96), claiming that: (i) the Trustee did not raise the Debtor's five-year failure to provide tax returns in his Motion to Dismiss or his Objection to Plan Modification and that the Court's action in raising that issue deprived the Debtor of a fair opportunity to defend the issue, and (ii) the Court's denial of the Plan Modification without a determination on the merits thereof is erroneous in fact and law.

## Discussion

E.D. Mich. LBR 9024-1(a)(3) applies to Debtor's Motion and states:

> (3) *Grounds.* Generally, and without restricting the discretion of the court, a motion for reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

To establish a "palpable defect," the moving party generally must point to "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d

605, 620 (6th Cir. 2005) (analyzing "palpable defect" standard in the context of a Rule 59(e) motion to alter or amend judgment, which was held to be consistent with the applicable local rule "palpable defect" reconsideration standard).

The Motions for Reconsideration do not allege any newly discovered evidence, intervening change in controlling law, or a need to prevent manifest injustice. Rather, the Motions for Reconsideration argue that the Court's rulings constitute clear errors of law.

First, the Debtor argues that it was clear error for the Court to raise, *sua sponte,* the Debtor's five-year violation of Section V.W of the Plan as a basis to deny the Plan Modification and grant the Trustee's Motion to Dismiss. The Debtor argues that he did not have a fair opportunity to consider and defend the issue, to present evidence to allow the Court to assess whether such default was material, or to seek to resolve the default as part of the proposed Plan modification.

Oral argument lasted approximately 57 minutes, and Debtor's counsel spoke for much of that time. At no time during oral argument did he request an adjournment of the hearing to "consider and defend the issue".

The Debtor's argument that he did not have a fair opportunity to defend the issue or to present evidence is unpersuasive. The Debtor admits that he provided copies of the tax returns for years 2016-2020 to the Trustee on January 24, 2022—*after* Plan expiration—and thus also admits to violating Section V.W of the Plan for years.

Contrary to the Debtor's argument, there was no need for the Debtor to present evidence to allow the Court to "assess whether such default was material". Five years is a very long time for a default to persist, and the Debtor's turnover of the 2016-2020 tax returns to the Trustee only after expiration of the Plan underscores the Debtor's repeated failure to comply with the Plan.

The Debtor's argument that the Court deprived him of the opportunity to "seek to resolve the default as part of the proposed Plan Modification" is similarly unavailing. The Plan expired nearly four months before the Debtor filed his proposed Plan Modification. Consequently, there was no plan in existence to be modified.

Next, the Debtor argues that it was clear error for the Court to determine that the Debtor's persistent default under Provision V.W of the Plan was "material" because, according to the Debtor, his failure to provide the tax returns had no impact on the financial aspects of the Plan. However, the Debtor is mistaken.

Section 1307(c)(6) permits the Court to dismiss a case:

for cause, including—(6) material default by the debtor with respect to a term of a confirmed plan.

There is nothing in Section 1307(c)(6) that requires a default to have a financial impact in order to constitute a "material default". Congress did not draft Section 1307(c)(6) to require a "material *financial* default"; instead, the statute uses only the words "material default". This is telling and is a strong indication of Congress' intent to give bankruptcy courts broad discretion to determine what constitutes a material default.

The language of Section 1307(c) also demonstrates Congress' intent to give bankruptcy courts broad discretion to determine what consequence, if any, should result from a material default. Section 1307(c) directs that a court "may" dismiss or convert a case "for cause". This deliberate phrasing indicates that dismissal or conversion does not automatically result from a material default and that the Court has discretion to dismiss or convert a Chapter 13 case "for cause" if there is a material default "with respect to a term of a confirmed plan." Section 1307(c)(6). *See also In re Formaneck*, 534 B.R. 29, 32 (Bankr. D.Col. 2015) ("Where there is a material default, 'dismissal or conversion is not automatic, but rather a matter of the Court's discretion.'") (internal citation omitted).

Although the wording of Section 1307(c)(6) does not require a financial impact in order for a plan default to be considered material, a debtor's failure to promptly turn over tax returns to the Trustee has a financial impact. A Chapter 13 debtor's tax returns are critically important to the Chapter 13 Trustee, who uses them to determine whether a debtor has more (or less) disposable income or is entitled to tax refunds that can be used to fund the plan. Armed with that information, a Chapter 13 Trustee can pursue, "in real time", increased plan payments, or payment of tax refunds toward funding the plan, and perhaps creditors would have been paid sooner. Conversely, if the tax returns show decreased income, the Trustee might excuse a debtor's obligation to turn over tax refunds. All of these possibilities demonstrate that a debtor's tax returns in a Chapter 13 case are inextricably intertwined with the financial aspects of the plan.

6

16-53256-lsg    Doc 98    Filed 09/06/22    Entered 09/06/22 16:15:57    Page 6 of 9

In the instant case, the Debtor's failure to turn over copies of the 2016-2020 tax returns robbed the Chapter 13 Trustee of his ability to pursue the Debtor (or his tax refunds) in "real time" and obfuscated the transparency to which the Trustee and other creditors are entitled regarding the Debtor's disposable income, tax refunds, and ability to use tax refunds to fund the plan.

Moreover, the cases that the Debtor cites in support of his argument are not persuasive. The primary case the Debtor relies on is *In re Sanchez*, 2016 WL 6127507 at *1 (Bankr. S.D. Fla. Oct. 20, 2016). The issue before the *Sanchez* court was the same basic issue addressed in the Motions for Reconsideration—whether the failure to turn over tax returns to the Trustee constituted a material default under Section 1307(c)(6). *Id.* The *Sanchez* court analyzed decisions from other bankruptcy courts, including the other cases cited by the Debtor, and noted that those decisions finding material defaults all involved circumstances where the material default had a financial impact on the creditors. *Id.* at *3. Although opinions relating to the scope of a "material default" may often involve financial issues such as missed payments, there simply is no requirement in Section 1307(c)(6) that the default be a financial one or have an adverse financial effect on creditors. Instead, the exact language in Section 1307(c)(6) is simply a "material default by the debtor with respect to a term of a confirmed plan." If there is a material default, Section 1307(c) gives the bankruptcy court discretion to determine the proper outcome—dismissal, conversion, or neither. The *Sanchez* court exercised its discretion under the facts of that case and determined that a material default must have

financial consequences to creditors and that the failure to turn over tax returns was a non-material default. *Id*. at *6. The *Sanchez* court then decided to sanction the debtor for that default of a term of the Chapter 13 plan. *Id*.

This Court does not adopt the *Sanchez* court's view that in order for a default to be "material" it must have financial consequences for the creditors. If Congress intended financial consequences to creditors to be a requisite element of a material default, it would have said so in Section 1307(c)(6). Instead, Section 1307(c)(6) relates to a material default of a term of a confirmed plan. It is then left to the bankruptcy court's discretion as to whether there is cause for conversion or dismissal as a result of the material default.

The Debtor also cites three other cases in which bankruptcy courts found material defaults for failure to make payments or set aside trust fund taxes as required by the terms of the respective Chapter 13 plans. Although those courts found actions or inactions of a debtor that result in creditors receiving less than they should under a Chapter 13 plan to be material defaults, it does not follow that a material default necessarily requires a financial impact on creditors.

In the final analysis, the Debtor's Plan expired on January 4, 2022. When the Debtor filed his Plan Modification nearly four months post-expiration, there was no plan in existence to modify. Even *Sanchez*—a case on which the Debtor relies—noted that the court could not modify an expired plan. *In re Sanchez*, 2016 WL 6127507 at *3 (Bankr. S.D. Fla. Oct. 20, 2016). Moreover, plan modification is governed by Section

1329 which, in turn, requires compliance with Section 1325(a), including the "good faith" requirement in Section 1325(a)(3). Consequently, even if the Debtor's Plan had still existed when the Debtor sought to modify it, the Debtor would have been required to demonstrate that his plan modification was proposed in good faith. *See* 11 U.S.C. §§ 1329(b)(1) and 1325(a)(3). The Debtor's five-year failure to turn over tax returns to the Chapter 13 Trustee as required by Section V.W of the Plan is inconsistent with the good faith requirement of § 1325(a)(3). Thus, even if the Debtor's Plan had not expired, the Debtor would not have been able to modify it anyway.

In sum, the Court concludes that the Motions for Reconsideration do not demonstrate that the Court made a clear error of law or that there was a palpable defect in the Court's ruling that requires a different disposition of the Dismissal Motion and the Plan Modification. Simply put, the Debtor disagrees with the Court's ruling to dismiss the case and deny plan modification. That disagreement does not provide grounds for the Court to reconsider its ruling. Accordingly,

The Motions for Reconsideration are denied; the Court will enter separate orders denying each of those motions.

**Signed on September 6, 2022**



/s/ Lisa S. Gretchko
_____
**Lisa S. Gretchko**
**United States Bankruptcy Judge**